Richard A. Pelley      15732500
PELLEY LAW OFFICES
905 North Travis Street
Sherman, Texas 75090
(903) 813-4778

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| IN RE:<br><br>GARY COFFMAN<br>ANGELITA COFFMAN<br><br><br>DEBTORS | CASE NO. 15-41539 |
| GARY COFFMAN<br>ANGELITA COFFMAN,<br>　　　　　Plaintiffs<br><br>vs.<br><br>REAL TIME RESOLUTIONS, INC.<br>AS AGENT FOR AURORA COMMERCIAL<br>CORP.<br>　　　　Defendants | Adversary Proceeding<br>No. 16-04061 |

AMENDED
## COMPLAINT TO DETERMINE NATURE, EXTENT,
### AND VALIDITY OF LIEN

Comes Now Plaintiff, GARY COFFMAN and ANGELITA COFFMAN ("Plaintiff"), complaining of REAL TIME RESOLUTIONS, INC AS AGENT FOR AURORA COMMERCIAL CORP. "Defendant"), and for cause of action would respectfully show the Court as follows:

### Parties and Services of Summons

1.01 Plaintiff GARY COFFMAN AND ANGELITA COFFMAN, are individuals residing in Denton County, Texas, and are the Debtors in bankruptcy Case number 15-41539, a Chapter 13 proceeding in this Court.

1.02 Defendant, REAL TIME RESOLUTIONS, INC AS AGENT FOR AURORA COMMERCIAL CORP. ,is a domestic corporation and may be

6.7.16\LB

served with process by serving is registered agent, REAL
TIME RESOLUTIONS, INC AS AGENT FOR AURORA COMMERCIAL
CORP.,PO 35888, Dallas, Texas 75235, pursuant to Bankruptcy
Rule 7004(b)(3) and (8).

1.03 Rose Velasquez, Senior Analyst Defendant, REAL TIME
RESOLUTIONS, INC AS AGENT FOR AURORA, may be served with
process at the following address, 1349 Empire Central Drive,
Ste. 150, Dallas, Texas 75247, pursuant to Bankruptcy Rule
7004(b)(3) and (8).

1.04 Max Murphy, Attorney for Defendant, REAL TIME RESOLUTIONS,
INC AS AGENT FOR AURORA,  may be served with process at the
following address, 5950 Berkshire Lane, Suite 410, Dallas
Texas 75225, pursuant to Bankruptcy Rule 7004(b)(3) and (8).

## Jurisdiction and Venue

2.01 This Court has jurisdiction to hear this Adversary
Proceeding pursuant to 28 U.S.C. §157 and §1334.

2.02 This Adversary Proceeding is a "core proceeding" as defined
in 28 U.S.C. §157(b)(1) and (2)(A), (K) and (O), and is
brought pursuant to 11 U.S.C. §502, 506, and 1322(b)(2), 28
U.S.C. §2201-2202, and Bankruptcy Rule 7001.

2.03 This Court has supplemental jurisdiction to hear all state
law claims pursuant to 28 U.S.C. §1367.

2.04 This matter is primarily a core proceeding and this Court
has jurisdiction to enter a final order on all causes of
action; however, in the event any cause of action asserted
herein should be determined to be a non-core proceeding,
Plaintiff consents to the entry of a final order by this
Court.

2.05 Venue is proper in this Court as to all Defendants pursuant
to 28 U.S.C. §1409(a).

## Factual Background

3.01 Heretofore, Plaintiffs purchased the following described real property for use as their principal residence:

> Eldorado Fairways At the Trails Ph A Blk C Lot 1,
> City of Frisco, Texas, County of Denton

3.02 The Plaintiff financed the subject property to be paid by two promissory notes, both secured by a Deed of Trust lien against the property: (1) a note for the principal sum of $407,095.29 payable to Nationstar Mortgage, LLC, as successor to Lehman Brothers Bank, FSB, a Federal Savings Bank, as secured by a first lien against the property (the "First Lien Note"), which note is not affected by this Adversary Proceeding; and, (2) a note in the principal sum of $131,299.99 to Real Time Resolutions, as Agent for Aurora Commercial Corp. and payable to Lehman Brothers Bank, FSB, a Federal Savings Bank, and its successor Aurora Loan Services, LLC (the "Second Lien Note"). Payment of the Second Lien Note was purportedly secured by a Deed of Trust as recorded as document number 2007-13852 of the Real Property Records of Denton County, Texas.

3.03 True and correct copies of the Second Lien Deed of Trust securing the Second Lien Note is attached hereto as Exhibit "A". Such Exhibit is incorporated herein by reference for all purposes.

3.04 The Second Lien Note and Deed of Trust are now owned and held by some combination of the Defendants or successors and assigns of Defendants. The unpaid principal balance of the Second Lien Note as of the petition date of Plaintiff's bankruptcy was $131,299.99.

3.05 The value of the property as of the petition date was

$398,000.00. The amounts due and outstanding for property
includes: (1) the unpaid principal balance of the First Lien
Note in the amount of $407,095.29.  Accordingly, the debts
and lien superior to the Second Lien Note exceed the value
of the Property as of the petition date.

## First Cause of Action - Determination of Ownership of the Second Lien Note and Related Liens

4.01 The allegations of Paragraphs 1.01 thru 3.05 of this
Complaint are realleged and incorporated herein by reference
for all purposes.

4.02 At the time it was originally executed and delivered by
Plaintiff, the Second Lien Note was payable to Defendant
Real Time Resolutions. The Deed of Trust securing the Second
Lien Note states Real Time Resolutions is the ("Lender"),
and is entitled to receive all payments under the Note.
Prior to the filing of the bankruptcy petition, all payments
paid under the Second Lien Note had been paid to an entity
operating under the name of Real Time Resolutions.

4.03 To the extent that MERS is named in the Deed of Trust or any
other document securing the Second Lien Note as a "Nominee"
for the benefit of Lender and Lender's successor and
assigns, and the successors and assigns of MERS, then MERS
is named as a Defendant herein.

4.04 Real Time Resolutions filed a proof of claim. A true and
correct copy of such proof of claim is attached hereto as
Exhibit "B" and incorporated herein by reference for all
purposes (the "Claim").

4.05 Debtor is unaware of any transfers, endorsements, or
assignments of either the Note or the Deed of Trust from
Real Time Resolutions, so the identify of the current owner
and holder of the Note is unclear from the Claim.

4.06 Pursuant to 28 U.S.C. §2201-2202, the Federal Declaratory Judgment Act, Plaintiffs request that current holder and owner of the Note be determined as wells the actual beneficiary of the Deed of Trust, and Judgment be entered as requested in this Complaint against such owner and holder.

## Second Cause of Action - Objection to Claim and Determination Of Secured Status

5.01 The allegations of Paragraphs 1.01 thru 4.06 of this Complaint are realleged and incorporated herein by reference.

5.02 Plaintiff requests the Court to allow Defendants' claim as an unsecured claim only. Pursuant to 11 U.S.C. §506(a)(1), a creditor's claim may only be allowed as a secured claim to the extent of the value of such creditor's interest in real estate property. The value of Plaintiff's Property is less than the amount of the First Lien Note and accrued property taxes.

5.03 Accordingly, the Second Lien Note is wholly unsecured and should only be allowed as an unsecured claim without interest, attorney's fees, or other charges.

## Third Cause of Action - Determination of Validity of Liens

6.01 The allegations of Paragraphs 1.01 thru 4.06 of this Complaint are realleged and incorporated herein by reference.

6.02 The Second Lien Note is purportedly secured by a Vendor's and Deed of Trust Lien against the Property.

6.03 To the extent a purported lien secures a claim that is not an allowed secured claim, such liens are void pursuant to 11 U.S.C. §506(d).

6.04 Accordingly, this Court should declare the purported liens of all Defendants against the Property alleged to otherwise secured the Second Lien Note as void.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for the following relief:

1. That this Court determine the current identity of the entity or entities which are the current owner and holder of the Second Lien Note and any purported liens securing its payment;

2. That this Court determine the value of the Property and the amount of the superior liens to the Second Lien Note and declare the Second Lien Note to be a fully unsecured claim;

3. That this Court declare the liens purportedly securing the Second Lien Note to be void;  and,

4. For such other and further relief at law or in equity to which Plaintiff may show themselves justly entitled.

Respectfully submitted,
PELLEY LAW OFFICES
905 North Travis Street
Sherman, Texas 75090
(903) 813-4778

/s/Richard A. Pelley
Richard A. Pelley
State Bar I.D. 15732500

## CERTIFICATE OF SERVICE

I certify that on June 7, 2016, a true and correct copy of the annexed/foregoing has been served by U.S., first-class mail or by electronic filing, as follows:

Debtor:

Gary Coffman
Angelia Coffman
11874 Frontier Drive
Frisco, TX 75034

Trustee:

Standing Chapter 13 Trustee
Carey D. Ebert
500 North Central Expressway
Suite 350
Plano, Texas 75094-1166

U.S. Trustee
300 Plaza Tower
110 North College Avenue
Tyler, Texas 75702

Creditor:

Real Time Resolutions, Inc.
As Agent for Aurora Commercial Corp.
1349 Empire Central Drive
Suite 150
Dallas, Texas 75247

Max Murphy
Angel L. Reyes & Associates, PC
5950 Berkshire Lane, Ste. 410
Dallas, Texas 75225

/s/Richard A. Pelley
Richard A. Pelley

# NOTE

| January 31 , 2007 | PLANO, | TEXAS |
|---|---|---|
| *Date* | *City* | *State* |

11874 FRONTIER DRIVE,        FRISCO,        TEXAS               75034

*Property Address*

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 85,757.00 (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is
LEHMAN BROTHERS BANK, FSB , A FEDERAL SAVINGS BANK

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

## 2. INTEREST

I will pay interest at a yearly rate of        9.375      %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

## 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $        889.04
I will make my payments on the        first       day of each month beginning on        March
2007       . I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on February 1, 2022
I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at        400 PROFESSIONAL DRIVE, SUITE 500
GAITHERSBURG, MD 20879                              or at a different place if required by the Note Holder.

## 4. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any of my monthly payments by the end of        15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
5.00                % of my overdue payment, but not less than U.S. $        44.46                and not more than
U.S. $        44.46       . I will pay this late charge only once on any late payment.

(B) Notice from Note Holder
If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 20 days after the date on which the notice is mailed to me or, if it is not mailed, 20 days after the date on which it is delivered to me.

(C) Default
If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(D) Payment of Note Holder's Costs and Expenses .
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 5. THIS NOTE SECURED BY A DEED OF TRUST

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated
January 31, 2007                        , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

TEXAS · SECOND MORTGAGE · 1/80 · FNMA/FHLMC UNIFORM INSTRUMENT

Page 1 of 2

Form 3944
Amended 1/01
Initials:

VMP®-75(TX) (0403)

VMP Mortgage Solutions (800)521-7291



## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

_____ (Seal)        _____ (Seal)

GARY GOSSMAN              -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                        -Borrower

_____ (Seal)        _____ (Seal)
                          -Borrower                                        -Borrower

*(Sign Original Only)*



Execution

## COLLECTION AGREEMENT

This COLLECTION AGREEMENT (this "Agreement") is made and entered into by and between AURORA LOAN SERVICES LLC ("Aurora"), a Delaware limited liability company, REAL TIME RESOLUTIONS, INC. ("Real Time"), a Texas corporation and Garrett Acquisitions, LLC ("Garrett"), a Nevada limited liability company, and dated as of _August 22_, 2005. Aurora, Real Time and Garrett may be collectively referred to herein as the "Parties."

### WITNESSETH:

WHEREAS, Aurora, among other activities, originates and services certain loans;

WHEREAS, Real Time is a corporation engaged in providing collection services to lenders, including recovery of deficiency and charge-off debt (the "Services");

WHEREAS, Garrett is a limited liability company that will hold title to certain loans for which Real Time provides Services in order to facilitate the collection of these loans;

WHEREAS, Aurora requires collection services with respect to certain loans and desires that Real Time provide such collection services in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

I.     Referral and Documentation.  Subject to and in accordance with the terms of this Agreement, Real Time will provide Services with respect to those loans (the "Loans") for which Aurora, in its sole discretion, from time to time shall deliver a service order (each, a "Service Order"), which Service Order shall be in the form attached hereto as Exhibit A.  Aurora will deliver Service Orders to Real Time by facsimile or electronic mail or such other means as may be agreed to by the Parties from time to time.  In addition to each Service Order, Aurora shall deliver to Garrett an executed assignment to Garrett of all of Aurora's rights and title in and to the related note for collection purposes only (and such assignment shall not be deemed a final transfer of the note), which assignment shall be in the form attached hereto as Exhibit B, along with the following documentation upon request and as needed, to the extent available:

(a)     a copy of the original Loan application;

(b)     a copy of the applicable Loan instruments, including the related note, the related security instrument, any guaranty, any UCC financing statements and any assignments;

(c)     the name, address, social security number and telephone number of the person(s) responsible for payment of the Loan;

(d)     documentation regarding any payments, set-offs or amounts received by Aurora on the Loan;

(e)     a foreclosure file/charge-off calculation worksheet, including a copy of any bidding instructions, foreclosure deed, sheriff's deed, substitute trustee's deed or other similar instrument if the Loan has gone through foreclosure;

(f)     a copy of any BPO or appraisal obtained in conjunction with any foreclosure action or REO disposition;

(g)     the amount of the outstanding claim;

(h)     a payoff statement as of the foreclosure date / charge-off date;

(i)     a collection file / loss mitigation file;

(j)     a bankruptcy file / notices received / proof of claims filed

(k)     information as to whether any prior servicer has filed a Form 1099C with the Internal Revenue Service, to the extent known to Aurora; and

(l)     any other document Aurora in its reasonable judgment believes is related to the outstanding claim.

All of the foregoing documentation shall be referred to herein as the "Aurora Documentation." All Aurora Documentation shall be considered Confidential Information (as defined below).

Solely for the purpose of permitting Real Time to obtain automated access to Aurora Documentation, Aurora shall provide Real Time with secure access to Aurora's Fidelity MSP system and various other secure websites, as identified from time to time by Aurora, via a private network (collectively, the "Systems"). Aurora shall provide one or more passwords as deemed appropriate by Aurora for use by Real Time in accessing the Systems. Such passwords shall be individual to Real Time. Aurora shall have the right to block Real Time's access to the Systems as Aurora may, in its sole discretion, deem necessary or advisable. Real Time shall be responsible for preventing the misuse or misappropriation of passwords issued to it. Real Time shall maintain the confidentiality and security of its passwords, which shall be considered Confidential Information. In the event of any misuse or misappropriation of passwords, Real Time will be solely responsible therefor. Aurora shall have no liability for any damages suffered due to misuse or misappropriation of passwords issued to Real Time. Solely to the extent necessary to access Aurora Documentation during the term and in accordance with this Agreement, Aurora grants Real Time a personal, non-exclusive, non-transferable, and non-sublicensable license to access and use the Systems, strictly for Real Time's use in furtherance of the purposes of this Agreement. This license may be revoked by Aurora at any time for any reason.

II.     Services To Be Performed. Real Time hereby agrees to provide Services to Garrett for the benefit of Aurora that are in accordance with (i) generally accepted standards within the collection services industry with respect to loans of the same type as the Loans and (ii) in accordance with all applicable laws, statutes, regulations and orders, including, but not limited to, the United States Bankruptcy Code, the Fair Debt Collection Practices Act, any other similar federal, state and local collection/consumer protection laws, rules and regulations, and consumer privacy laws. In connection with the Services, Real Time shall (i) decide, in its sole and absolute discretion, which Loans it deems worthy of pursuing for collection, and will notify Aurora of any Loans for which Real Time will not pursue collection, and shall immediately return all Loan files and supporting documentation and shall

reassign all of its rights and title in such Loans to Aurora by executing an Assignment substantially in the form attached hereto as Exhibit B, as applicable, (ii) subject to Section XI, have the right to retain local counsel, support personnel and other services necessary to effectuate collection of the debt and (iii) have the right to settle any and all claims arising from their Services for any amount exceeding ten percent ⬛⬛⬛⬛⬛ of the claim amount without approval from Aurora, including payment in kind, cash settlement, or a settlement with extended terms and conditions. For purposes of this Agreement, "settle" or "settlement" shall mean the negotiation with the borrower, co-borrower or unrelated third party or other entity for the receipt of collection, recovery, sales, litigation or other proceeds associated with the Loans that Aurora has assigned to Garrett, and the execution of assignments, loan modification agreements, loan forbearance agreements, releases or other documents to the borrower, co-borrowers or unrelated third parties or other entity in conjunction with such settlement, as described (but not limited) by that power of attorney outlined in Exhibit D. In consideration for their completion of Services pursuant to the terms hereof with respect to each Loan, Real Time shall be entitled to the fees set forth herein from the Gross Amount Collected and shall remit to Aurora the Net Amount Collected pursuant to the terms hereof. For the purposes of this Agreement, the "Gross Amount Collected" shall mean the entire amount collected from a borrower by Real Time within any particular period with respect to a Loan, prior to any deductions therefrom and the "Net Amount Collected" shall mean the amount collected from a borrower or other party or entity by Real Time within any particular period with respect to a Loan net of any fees retained by Real Time in accordance with the terms of this Agreement.

III.   Reports and Records.  Real Time shall provide Aurora a monthly status report with respect to each Loan substantially in the form attached hereto as Exhibit C, or in such other format as agreed to by the Parties from time to time. Real Time shall maintain records for each referred Loan in such manner as to accurately reflect the performance of its obligations under this Agreement and shall make such records available for inspection by Aurora during normal business hours.

IV.   Collection Fees for Services.   In consideration for providing Services for each Loan, Real Time shall be entitled to ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ of the Gross Amount Collected.

V.   Costs of Collection.  Aurora shall not reimburse Real Time for any costs incurred in the performance of the Services, including, but not limited to, skip tracing, asset searches and legal fees (including, but not limited to, filing fees, court costs, attorneys' fees and service of process fees), regardless of whether any funds are received from a borrower.

VI.   Payments and Remittance.  Real Time shall segregate and hold all funds collected and received pursuant to this Agreement separate and apart from any of its own funds and general assets and shall establish and maintain a custodial account at a bank reasonably acceptable to Aurora, in the form of time deposit or demand account, titled "Real Time Resolution ITF (in trust for) Aurora Loan Services LLC". On or before the fifth (5th) business day of each month, Real Time shall account to Aurora for all payments received on each Loan during the previous month and shall deliver to Aurora the Net Amount Collected for each such Loan by wire transfer of immediately available funds to an account designated by Aurora from time to time. If a borrower or other entity makes a payment directly to Aurora with respect to any Loan, Aurora agrees to immediately pay or credit to the account of Real Time the appropriate percentage of such payment, as determined in accordance with the applicable provisions of Sections V, VI or VII of this Agreement.

IN WITNESS THEREOF, the Parties have executed this Agreement on this 22nd day of _Avgust_, 2005.

REAL TIME RESOLUTIONS, INC.

By: _____
Name: Eric C. Green
Title: Chairman/CEO


AURORA LOAN SERVICES LLC

By: _____
Name: _____
Title: _____


GARRETT ACQUISITIONS, LLC.

By: _____
Name: Janice L. Conners
Title: Secretary

Exhibit D

### SPECIAL AND LIMITED POWER OF ATTORNEY
### IN FAVOR OF REAL TIME RESOLUTIONS, INC.

_August 22_____, 200_5_

KNOW ALL MEN BY THESE PRESENTS:

Reference is hereby made to that certain Collection Agreement dated effective as of August __, 2005 (the "Agreement") among Real Time Resolutions, Inc., a Texas corporation ("Real Time"), Aurora Loan Services LLC ("Aurora"), a Delaware limited liability company, and Garrett Acquisitions, LLC ("Garrett"), a Nevada limited liability company, under which Aurora and Garrett agreed to enter into this Special and Limited Power of Attorney in favor of Real Time in connection with collection services to be provided by Real Time on behalf of Aurora and/or Garrett with respect to certain mortgage loans pursuant to the Agreement (the "Mortgage Loans").

The undersigned hereby appoints Real Time its true and lawful Attorney-in-Fact and in its name, place and stead and for its use and benefits hereby authorizes and empowers the aforesaid Attorney-in-Fact by and through any officers appointed by the Board of Directors of Real Time to perform the following with respect to the Mortgage Loans:

(a)     to make, execute, acknowledge, swear to, record, publish, file, procure or repair any agreement, document, certificate, instrument, file or other paper that pertains to such Mortgage Loans, including, without limitation, to endorse checks and promissory notes, to execute assignments and releases of loans or liens and other instruments, documents and papers, to possess and procure all lender, collateral, correspondent or business files which pertain to such mortgage loans, to dispense with the same and the proceeds thereof all in accordance with and subject to the terms of any rights, assignments, collection agreements, servicing agreements, powers of attorney agreements or other agreements with respect to which Aurora and Garrett is or was a direct or indirect party or beneficiary;

(b)     to endorse, execute or deliver any and all documents or instruments necessary to foreclose on any loan or lien, to maintain the lien created by any debt or security instrument, or any portion thereof, and to execute upon or newly create any and all modifications, forbearance agreements, waivers, loan or other documents or amendments to any documents, and any or all other instruments of satisfaction or cancellation or of partial or full release or discharge, or of subordination or modification, and all other comparable instruments, including, without limitation, the recording or filing with the appropriate public officials such documents or instruments and the endorsement or deposit of any instrument or monies in connection with the liquidation, foreclosure, collection, settlement, modification, forbearance or sale of such loan or lien, whether or not in bankruptcy.

IN WITNESS WHEREOF, Real Time, Aurora and Garrett have caused to be signed by duly authorized officers, this Special and Limited Power of Attorney effective as of the date set forth above.

REAL TIME RESOLUTIONS, INC.

By: _____
    Name: Eric C. Green
    Title: CEO/Chairman

AURORA LOAN SERVICES, LLC

By: _____
    Name: _____
    Title: _____

GARRETT ACQUISITIONS, LLC

By: _____
    Name: Janice L. Conners
    Title: Secretary

STATE OF TEXAS      §
                        §
COUNTY OF DALLAS   §

       Before me, a Notary Public in and for the State of Texas, on this day personally appeared Eric C. Green, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he is the Chief Executive Officer of Real Time Resolutions, Inc., and that he executed the foregoing document in such capacity and with full authority in the premises.

       GIVEN UNDER MY HAND AND SEAL OF OFFICE this _22 rd_ day of _August_,
2005.

> DANA GOODENOW
> Notary Public, State of Texas
> My Commission Expires
> September 05, 2007

_____
Notary Public in and for the State of Texas

STATE OF _New York_     §
                        §
COUNTY OF _New York_ §

       Before me, a Notary Public in and for the State of _New York_,   on   this   day personally appeared _Karen C. Manson_ known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she is the _SVP_ of Aurora Loan Services, LLC and that she executed the foregoing document in such capacity and with full authority in the premises.

       GIVEN UNDER MY HAND AND SEAL OF OFFICE this _23_ day of _August_,
2005.

> NEIL JAMES
> Notary Public, State of New York
> No.01JA6119964
> Qualified In New York County
> Commission Expires 12/13/2008

_____
Notary Public in and for the State of _New York_

STATE OF TEXAS      §
                        §
COUNTY OF DALLAS   §

       Before me, a Notary Public in and for the State of Texas, on this day personally appeared Janice L. Conners, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she is the Secretary of Garrett Acquisitions, LLC, and that she executed the foregoing document in such capacity and with full authority in the premises.

       GIVEN UNDER MY HAND AND SEAL OF OFFICE this _22 nd_ day of _August_,
2005.

> DANA GOODENOW
> Notary Public, State of Texas
> My Commission Expires
> September 05, 2007

_____
Notary Public in and for the State of Texas

B 10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT  Eastern District of Texas (Sherman) | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>GARY COFFMAN -- SS No. XXX-XX-4457 | Case Number:<br>15-41539 |
|---|---|

NOTE:   Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing.
You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>REAL TIME RESOLUTIONS, INC. AS AGENT FOR AURORA COMMERCIAL CORP. | COURT USE ONLY |
|---|---|
| Name and address where notices should be sent:<br>REAL TIME RESOLUTIONS, INC. AS AGENT FOR AURORA COMMERCIAL CORP.<br>1349 Empire Central Dr<br>Suite 150<br>Dallas, TX 75247-<br><br>Telephone number:  (888)741-1124     email: bankruptcy@rtresolutions.com | ☐ Check this box if this claim amends a previously filed claim.<br><br>Court Claim Number:_____<br>(If known)<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br>Real Time Resolutions, Inc.<br>PO Box 35888<br><br>Dallas, TX 75235<br><br>Telephone number:  (888)741-1124     email: bankruptcy@rtresolutions.com | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |

**1. Amount of Claim as of Date Case Filed:**       $_____131,299.99_____

If all or part of the claim is secured, complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim.  Attach a statement that itemizes interest or charges.

**2. Basis for Claim:**   Money loaned
(See instruction #2)

| 3. Last four digits of any number by which creditor identifies debtor:<br>2115 | 3a. Debtor may have scheduled account as:<br>2115<br>(See instruction #3a) | 3b. Uniform Claim Identifier (optional):<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim**    (See instruction #4)

Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted document, and provide the requested information.

Nature of property or right of setoff:   ☒ Real Estate  ☐ Motor Vehicle   ☐ Other

Describe:
11874 FRONTIER DR, FRISCO TX, 75034

Value of Property: $_____

Annual Interest Rate   9.37500 %   ☒ Fixed  or  ☐ Variable
(when case was filed)   Creditor reserves the right to amend its claim to seek a deficiency balance, if any, in the event creditor's collateral is liquidated.

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____71,523.13_____

Basis for perfection: 2nd Deed of Trust

Amount of Secured Claim: $_____131,299.99_____

Amount Unsecured:        $_____0_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a).**  If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. § 507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

Amount entitled to priority:

$_____0_____

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(_____).

* Amounts are subject to adjustment on 4/1/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits:**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)



B 10 (Official Form 10) (04/13)                                                                                    2

---

**7. Documents:** Attached are *redacted* copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and *redacted* copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.  ☒ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Rose Velasquez

Title:  Senior Analyst/ Trainer- Bankruptcy

Company:  Real Time Resolutions, Inc

(Signature)          9/8/15 (Date)

Address and telephone number (if different from notice address above):

1349 Empire Central Dr
Suite 150
Dallas, TX 75247-

(888) 741-1124                    bankruptcy@rtresolutions.com
Telephone number:              email:

---

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Exhibit 'A'

Case No.: 15-41539

Debtors:  GARY COFFMAN -- SS No. XXX-XX-4457

Address:  11874 FRONTIER DR

FRISCO, TX 75034

Loan No.: 2115

On filing petition 08/27/15 debtor(s) owed claimant $131,299.99.

ARREARAGES owed as of 08/27/15, the date of filing of the petition.

| From | To | Type of Charge | # | Unit Charge | Total |
|---|---|---|---|---|---|
| 04/01/2009 | 08/01/2015 | Payment | 77 | 889.04 | 68,456.08 |
| | | Late Charge | - | - | 3,067.05 |
| | | | - | - | - |
| | | | | Subtotal: | 71,523.13 |
| | | | | **TOTAL:** | **71,523.13** |

The above figures represent the delinquency at the time of filing and do not reflect payments received after the date of the filing of the bankruptcy.

Late charges accrue to the account when payments are received 16 days past the payment due date.

# Exhibit 'A-1'

Case No.: 15-41539

Date:       09/01/2015

Debtors:   GARY COFFMAN -- SS No. XXX-XX-4457

Address:  11874 FRONTIER DR

             FRISCO, TX  75034

Loan No.: 2115

On filing petition 08/27/15 debtor(s) owed claimant total debt of  $131,299.99.

The Total Debt owed at petition:

| | |
|---|---|
| Principal Balance | 79,734.85 |
| Interest | 48,498.09 |
| Late Charge | 3,067.05 |
| **Total Debt:** | **131,299.99** |

The above figures represent the amount owed at the time of filing and do not reflect payments received after the date of the filing of the Bankruptcy.

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.   See Bankruptcy Rule 3001 (c)(2).

Name of debtor:  GARY COFFMAN

Name of creditor:  REAL TIME RESOLUTIONS, INC. AS AGENT FOR AURORA COMMERCIAL CORP.

Case number:  15-41539

Last four digits  2115
of any number you use to identify the debtor's account:

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. Principal due  (1) $  79,734.85

2. Interest due

| Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount |
|---|---|---|---|
| 9.37500 % | 03/01/2009 | 08/27/2015 | $  48,498.09 |

Total interest due as of the petition date  $  48,498.09   Copy total here >>  (2) + $  48,498.09

3. Total principal and interest due  (3) $  128,232.94

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | Amount |
|---|---|---|
| Late Charge | | $  3,067.05 |

Total prepetition fees, expenses, and charges.  Add all of the amounts listed above.  $  3,067.05

## Part 3: Statement of Amount Necessary to Cure Default as of the Petition Date

Does the installment payment amount include an escrow deposit?

[X] No

[ ] Yes.  Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

1. Installment payments due

Date last payment received by creditor  03/01/09

Number of installment payments due  (1)  77

2. Amount of installment payments due

77   installments @   889.04  + $  68,456.08

Total installment payments due as of the petition date  68,456.08   Copy total here >>  (2) $  68,456.08

3. Calculation of cure amount

| Add total prepetition fees, expenses, and charges | Copy total from Part 2 here + $ | 3,067.05 |
|---|---|---|
| Subtract total of unapplied funds (funds received but not credited to account) | - $ | 0.00 |
| Subtract amounts for which debtor is entitled to a refund | - $ | 0.00 |
| Total amount necessary to cure default as of the petition date | (3) $ | 71,523.13 |

Copy total onto Item 4 of
Proof of Claim form

Return To: AURORA LOAN SERVICES, LLC
601 5th Ave, PO Box 4000
Scottsbluff, NE 69363

Prepared By: THOMAS E. BLACK, JR
2905 CORPORATE CIRCLE
FLOWER MOUND, TX 75028

*I certify this is to be a true and correct copy of the original instrument.*
*REUN.ON TITLE*
By: _____

# PURCHASE MONEY DEED OF TRUST
MIN

THIS DEED OF TRUST is made this   **31st**   day of   **January, 2007**
among the Grantor,
    **GARY COFFMAN , A MARRIED MAN**   Joined herein proforma by Angi Coffman

(herein "Borrower"),

**THOMAS E. BLACK, JR**        (herein "Trustee"), and the Beneficiary,
Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter
defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware,
and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK**
("Lender") is organized and existing under the laws of   **UNITED STATES**
and has an address of   **400 PROFESSIONAL DRIVE, SUITE 500, GAITHERSBURG, MD 20879**

---

TEXAS - SECOND MORTGAGE - 6/82 - PURCHASE MONEY - FNMA/FHLMC UNIFORM INSTRUMENT
WITH MERS

Form 3844A

VMP-76N(TX) (0506)    Amended 2/99
Page 1 of 8    Initials
VMP Mortgage Solutions, Inc. (800)521-7291

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of   Denton                                                                , State of Texas:
**All that tract or parcel of land as shown on Schedule "A" attached hereto which is incorporated herein and made a part hereof.**

Parcel ID Number:                                                                    which has the address of

**11874 FRONTIER DRIVE**                                                                     [Street]

**FRISCO**                                                  [City], Texas       **75034**   [Zip Code]
(herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing, canceling or assigning this Deed of Trust.

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated **January 31, 2007**                      and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $        **85,757.00** , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on **February 1, 2022**                           ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

Initials

Form 3844A

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 16 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 15 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

15. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

16. **Acceleration; Remedies.** Except as provided in paragraph 15 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower and to any other person required by applicable law as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 20 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 16, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting written notice at least 21 days prior to the day of the sale at the courthouse door in each of the counties in which the Property is situated. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Such sale shall be made at public vendue between the hours of 10 o'clock a.m. and 4 o'clock p.m. on the first Tuesday in any month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in such order as Trustee may determine. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property so sold with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

If the Property is sold pursuant to this paragraph 16, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at such sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

17. **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 16 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and

Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**18. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 16 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 16 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**19. Release.** Upon payment of all sums secured by this Deed of Trust, Lender shall release this Deed of Trust without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**20. Substitute Trustee.** Lender, at Lender's option, with or without cause, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Deed of Trust is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**21. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**22. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Deed of Trust cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby. In the event that any applicable law limiting the amount of interest or other charges permitted to be collected is interpreted so that any charge provided for in this Deed of Trust or in the Note, whether considered separately or together with other charges that are considered a part of this Deed of Trust and Note transaction, violates such law by reason of the acceleration of the indebtedness secured hereby, or for any reason, such charge is hereby reduced to the extent necessary to eliminate such violation. The amounts of such interest or other charges previously paid to Lender in excess of the amounts permitted by applicable law shall be applied by Lender to reduce the principal of the indebtedness evidenced by the Note, or, at Lender's option, be refunded.

**23. Purchase Money Deed of Trust; Vendor's Lien.** The funds lent to Borrower under the Note secured hereby were used to pay all or part of the purchase price of the Property. The Note secured hereby also is primarily secured by the Vendor's Lien retained in the deed of even date herewith conveying the Property to Borrower, which Vendor's Lien has been assigned to Lender, this Deed of Trust being additional security therefor.

**Rider Attached**

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____ (Seal)
GARY COFFMAN                    -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
Angi Coffman                   -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

*[Sign Original Only]*

STATE OF TEXAS
County of ~~Denton~~ Collin

Before me   the undersigned                                    on this day personally appeared

Gary Coffman and Angi Coffman

known to me (or proved to me on the oath of                              or through
Driver's License                          ) to be the person whose name is subscribed to the foregoing
instrument and acknowledged to me that                  executed the same for the purposes and consideration
therein expressed.

Given under my hand and seal of office this   31st      day of   January, 2007



Tamara S. McMillan

Notary Public

Seal
TAMARA S. McMILLAN
Notary Public, State of Texas
My Commission Expires
12/08/2007

VMP -76N(TX)  (0506)                    Page 8 of 8                          Initials: Form 3844A

## NOTE

January 31 , 2007                    PLANO,                              TEXAS

*Date*                              *City*                              *State*

11874 FRONTIER DRIVE,                    FRISCO,                    TEXAS                    75034

*Property Address*

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $      85,757.00      (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is
   LEHMAN BROTHERS BANK, FSB , A FEDERAL SAVINGS BANK
                                                      . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

### 2. INTEREST

I will pay interest at a yearly rate of      9.375      %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

### 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $      889.04
I will make my payments on the      **first**      day of each month beginning on      March
2007      . I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on      February 1, 2022
I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at      400 PROFESSIONAL DRIVE, SUITE 500
GAITHERSBURG, MD 20879                                      or at a different place if required by the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any of my monthly payments by the end of      15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be
5.00      % of my overdue payment, but not less than U.S. $      44.46      and not more than
U.S. $      44.46      . I will pay this late charge only once on any late payment.

**(B) Notice from Note Holder**

If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 20 days after the date on which the notice is mailed to me or, if it is not mailed, 20 days after the date on which it is delivered to me.

**(C) Default**

If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses** .

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 5. THIS NOTE SECURED BY A DEED OF TRUST

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated
January 31, 2007                    , protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

TEXAS - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT

Page 1 of 2

VMP®-75(TX) (0403)                    VMP Mortgage Solutions (800)521-7291

Form 3944
Amended 1/04
Initials:

## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

_____ (Seal)
GARY COFFMAN                -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

*(Sign Original Only)*


VMP-75(TX) (0403)                Page 2 of 2                Form 3944

Execution

## COLLECTION AGREEMENT

This COLLECTION AGREEMENT (this "Agreement") is made and entered into by and between AURORA LOAN SERVICES LLC ("Aurora"), a Delaware limited liability company, REAL TIME RESOLUTIONS, INC. ("Real Time"), a Texas corporation and Garrett Acquisitions, LLC ("Garrett"), a Nevada limited liability company, and dated as of _August 22_, 2005. Aurora, Real Time and Garrett may be collectively referred to herein as the "Parties."

## WITNESSETH:

WHEREAS, Aurora, among other activities, originates and services certain loans;

WHEREAS, Real Time is a corporation engaged in providing collection services to lenders, including recovery of deficiency and charge-off debt (the "Services");

WHEREAS, Garrett is a limited liability company that will hold title to certain loans for which Real Time provides Services in order to facilitate the collection of these loans;

WHEREAS, Aurora requires collection services with respect to certain loans and desires that Real Time provide such collection services in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

I.   Referral and Documentation.  Subject to and in accordance with the terms of this Agreement, Real Time will provide Services with respect to those loans (the "Loans") for which Aurora, in its sole discretion, from time to time shall deliver a service order (each, a "Service Order"), which Service Order shall be in the form attached hereto as Exhibit A.  Aurora will deliver Service Orders to Real Time by facsimile or electronic mail or such other means as may be agreed to by the Parties from time to time.  In addition to each Service Order, Aurora shall deliver to Garrett an executed assignment to Garrett of all of Aurora's rights and title in and to the related note for collection purposes only (and such assignment shall not be deemed a final transfer of the note), which assignment shall be in the form attached hereto as Exhibit B, along with the following documentation upon request and as needed, to the extent available:

(a)   a copy of the original Loan application;

(b)   a copy of the applicable Loan instruments, including the related note, the related security instrument, any guaranty, any UCC financing statements and any assignments;

(c)   the name, address, social security number and telephone number of the person(s) responsible for payment of the Loan;

(d)   documentation regarding any payments, set-offs or amounts received by Aurora on the Loan;

(e) a foreclosure file/charge-off calculation worksheet, including a copy of any bidding instructions, foreclosure deed, sheriff's deed, substitute trustee's deed or other similar instrument if the Loan has gone through foreclosure;

(f) a copy of any BPO or appraisal obtained in conjunction with any foreclosure action or REO disposition;

(g) the amount of the outstanding claim;

(h) a payoff statement as of the foreclosure date / charge-off date;

(i) a collection file / loss mitigation file;

(j) a bankruptcy file / notices received / proof of claims filed

(k) information as to whether any prior servicer has filed a Form 1099C with the Internal Revenue Service, to the extent known to Aurora; and

(l) any other document Aurora in its reasonable judgment believes is related to the outstanding claim.

All of the foregoing documentation shall be referred to herein as the "Aurora Documentation." All Aurora Documentation shall be considered Confidential Information (as defined below).

Solely for the purpose of permitting Real Time to obtain automated access to Aurora Documentation, Aurora shall provide Real Time with secure access to Aurora's Fidelity MSP system and various other secure websites, as identified from time to time by Aurora, via a private network (collectively, the "Systems"). Aurora shall provide one or more passwords as deemed appropriate by Aurora for use by Real Time in accessing the Systems. Such passwords shall be individual to Real Time. Aurora shall have the right to block Real Time's access to the Systems as Aurora may, in its sole discretion, deem necessary or advisable. Real Time shall be responsible for preventing the misuse or misappropriation of passwords issued to it. Real Time shall maintain the confidentiality and security of its passwords, which shall be considered Confidential Information. In the event of any misuse or misappropriation of passwords, Real Time will be solely responsible therefor. Aurora shall have no liability for any damages suffered due to misuse or misappropriation of passwords issued to Real Time. Solely to the extent necessary to access Aurora Documentation during the term and in accordance with this Agreement, Aurora grants Real Time a personal, non-exclusive, non-transferable, and non-sublicensable license to access and use the Systems, strictly for Real Time's use in furtherance of the purposes of this Agreement. This license may be revoked by Aurora at any time for any reason.

II. <u>Services To Be Performed</u>.   Real Time hereby agrees to provide Services to Garrett for the benefit of Aurora that are in accordance with (i) generally accepted standards within the collection services industry with respect to loans of the same type as the Loans and (ii) in accordance with all applicable laws, statutes, regulations and orders, including, but not limited to, the United States Bankruptcy Code, the Fair Debt Collection Practices Act, any other similar federal, state and local collection/consumer protection laws, rules and regulations, and consumer privacy laws. In connection with the Services, Real Time shall (i) decide, in its sole and absolute discretion, which Loans it deems worthy of pursuing for collection, and will notify Aurora of any Loans for which Real Time will not pursue collection, and shall immediately return all Loan files and supporting documentation and shall

reassign all of its rights and title in such Loans to Aurora by executing an Assignment substantially in the form attached hereto as <u>Exhibit B</u>, as applicable, (ii) subject to Section XI, have the right to retain local counsel, support personnel and other services necessary to effectuate collection of the debt and (iii) have the right to settle any and all claims arising from their Services for any amount exceeding ten percent XXXXX of the claim amount without approval from Aurora, including payment in kind, cash settlement, or a settlement with extended terms and conditions. For purposes of this Agreement, "settle" or "settlement" shall mean the negotiation with the borrower, co-borrower or unrelated third party or other entity for the receipt of collection, recovery, sales, litigation or other proceeds associated with the Loans that Aurora has assigned to Garrett, and the execution of assignments, loan modification agreements, loan forbearance agreements, releases or other documents to the borrower, co-borrowers or unrelated third parties or other entity in conjunction with such settlement, as described (but not limited) by that power of attorney outlined in Exhibit D. In consideration for their completion of Services pursuant to the terms hereof with respect to each Loan, Real Time shall be entitled to the fees set forth herein from the Gross Amount Collected and shall remit to Aurora the Net Amount Collected pursuant to the terms hereof. For the purposes of this Agreement, the "Gross Amount Collected" shall mean the entire amount collected from a borrower by Real Time within any particular period with respect to a Loan, prior to any deductions therefrom and the "Net Amount Collected" shall mean the amount collected from a borrower or other party or entity by Real Time within any particular period with respect to a Loan net of any fees retained by Real Time in accordance with the terms of this Agreement.

III.     <u>Reports and Records</u>. Real Time shall provide Aurora a monthly status report with respect to each Loan substantially in the form attached hereto as <u>Exhibit C</u>, or in such other format as agreed to by the Parties from time to time. Real Time shall maintain records for each referred Loan in such manner as to accurately reflect the performance of its obligations under this Agreement and shall make such records available for inspection by Aurora during normal business hours.

IV.     <u>Collection Fees for Services</u>. In consideration for providing Services for each Loan, Real Time shall be entitled to XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX of the Gross Amount Collected.

V.     <u>Costs of Collection</u>. Aurora shall not reimburse Real Time for any costs incurred in the performance of the Services, including, but not limited to, skip tracing, asset searches and legal fees (including, but not limited to, filing fees, court costs, attorneys' fees and service of process fees), regardless of whether any funds are received from a borrower.

VI.     <u>Payments and Remittance</u>. Real Time shall segregate and hold all funds collected and received pursuant to this Agreement separate and apart from any of its own funds and general assets and shall establish and maintain a custodial account at a bank reasonably acceptable to Aurora, in the form of time deposit or demand account, titled "Real Time Resolution ITF (in trust for) Aurora Loan Services LLC". On or before the fifth (5th) business day of each month, Real Time shall account to Aurora for all payments received on each Loan during the previous month and shall deliver to Aurora the Net Amount Collected for each such Loan by wire transfer of immediately available funds to an account designated by Aurora from time to time. If a borrower or other entity makes a payment directly to Aurora with respect to any Loan, Aurora agrees to immediately pay or credit to the account of Real Time the appropriate percentage of such payment, as determined in accordance with the applicable provisions of Sections V, VI or VII of this Agreement.

-3-

IN WITNESS THEREOF, the Parties have executed this Agreement on this 22ʳᵈ day of August, 2005.

REAL TIME RESOLUTIONS, INC.

By: _____
Name:  Eric C. Green
Title:   Chairman/CEO


AURORA LOAN SERVICES LLC

By: _____
Name: _____
Title: _____


GARRETT ACQUISITIONS, LLC.

By: _____
Name: Janice L. Conners
Title: Secretary

Exhibit D

SPECIAL AND LIMITED POWER OF ATTORNEY
IN FAVOR OF REAL TIME RESOLUTIONS, INC.

_August 22_, 2005

KNOW ALL MEN BY THESE PRESENTS:

Reference is hereby made to that certain Collection Agreement dated effective as of August __, 2005 (the "Agreement") among Real Time Resolutions, Inc., a Texas corporation ("Real Time"), Aurora Loan Services LLC ("Aurora"), a Delaware limited liability company, and Garrett Acquisitions, LLC ("Garrett"), a Nevada limited liability company, under which Aurora and Garrett agreed to enter into this Special and Limited Power of Attorney in favor of Real Time in connection with collection services to be provided by Real Time on behalf of Aurora and/or Garrett with respect to certain mortgage loans pursuant to the Agreement (the "Mortgage Loans").

The undersigned hereby appoints Real Time its true and lawful Attorney-in-Fact and in its name, place and stead and for its use and benefits hereby authorizes and empowers the aforesaid Attorney-in-Fact by and through any officers appointed by the Board of Directors of Real Time to perform the following with respect to the Mortgage Loans:

(a)    to make, execute, acknowledge, swear to, record, publish, file, procure or repair any agreement, document, certificate, instrument, file or other paper that pertains to such Mortgage Loans, including, without limitation, to endorse checks and promissory notes, to execute assignments and releases of loans or liens and other instruments, documents and papers, to possess and procure all lender, collateral, correspondent or business files which pertain to such mortgage loans, to dispense with the same and the proceeds thereof all in accordance with and subject to the terms of any rights, assignments, collection agreements, servicing agreements, powers of attorney agreements or other agreements with respect to which Aurora and Garrett is or was a direct or indirect party or beneficiary;

(b)    to endorse, execute or deliver any and all documents or instruments necessary to foreclose on any loan or lien, to maintain the lien created by any debt or security instrument, or any portion thereof, and to execute upon or newly create any and all modifications, forbearance agreements, waivers, loan or other documents or amendments to any documents, and any or all other instruments of satisfaction or cancellation or of partial or full release or discharge, or of subordination or modification, and all other comparable instruments, including, without limitation, the recording or filing with the appropriate public officials such documents or instruments and the endorsement or deposit of any instrument or monies in connection with the liquidation, foreclosure, collection, settlement, modification, forbearance or sale of such loan or lien, whether or not in bankruptcy.

IN WITNESS WHEREOF, Real Time, Aurora and Garrett have caused to be signed by duly authorized officers, this Special and Limited Power of Attorney effective as of the date set forth above.

REAL TIME RESOLUTIONS, INC.

By: _____
    Name:  Eric C. Green
    Title:  CEO/Chairman

AURORA LOAN SERVICES, LLC

By: _____
    Name: _____
    Title: _____

GARRETT ACQUISITIONS, LLC

By: _____
    Name:  Janice L. Conners
    Title:  Secretary

STATE OF TEXAS        §
                            §
COUNTY OF DALLAS   §

Before me, a Notary Public in and for the State of Texas, on this day personally appeared Eric C. Green, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he is the Chief Executive Officer of Real Time Resolutions, Inc., and that he executed the foregoing document in such capacity and with full authority in the premises.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 22^rd day of August, 2005.

> DANA GOODENOW
> Notary Public, State of Texas
> My Commission Expires
> September 05, 2007

_____
Notary Public in and for the State of Texas

STATE OF New York     §
                            §
COUNTY OF New York   §

Before me, a Notary Public in and for the State of New York, on this day personally appeared Karen C. Manson known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he is the SVP of Aurora Loan Services, LLC and that he executed the foregoing document in such capacity and with full authority in the premises.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 23 day of August, 2005.

> NEIL JAMES
> Notary Public, State of New York
> No.01JA6119964
> Qualified in New York County
> Commission Expires 12/13/2008

_____
Notary Public in and for the State of New York

STATE OF TEXAS        §
                            §
COUNTY OF DALLAS   §

Before me, a Notary Public in and for the State of Texas, on this day personally appeared Janice L. Conners, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she is the Secretary of Garrett Acquisitions, LLC, and that she executed the foregoing document in such capacity and with full authority in the premises.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 22nd day of August, 2005.

> DANA GOODENOW
> Notary Public, State of Texas
> My Commission Expires
> September 05, 2007

_____
Notary Public in and for the State of Texas